H. F. AHMANSON & CO & CONSOLIDATED — After Carryback — 95-0479700

Form 3800 (1994) Page 2

## Schedule A – Additional General Business Credit Allowed By Section 38(c)(2) (Before Repeal by the Revenue Reconciliation Act of 1990) – Only Applicable to C Corporations

| Line | Description | | | Amount |
|---|---|---|---|---|
| 16 | Enter the portion of the credit shown on line 5, page 1, that is attributable to the regular investment credit under section 46 (before amendment by the Revenue Reconciliation Act of 1990) | | 16 | 0 |
| 17 | Tentative minimum tax (from line 11, page 1) | 17 — 0 | | |
| 18 | Multiply line 17 by 25% (.25) | | 18 | 0 |
| 19 | Enter the amount from line 14, page 1 | 19 — 0 | | |
| 20 | Enter the portion of the credit shown on line 7, page 1 that is NOT attributable to the regular investment credit under section 46 (before amendment by the Revenue Reconciliation Act of 1990) | 20 — 0 | | |
| 21 | Subtract line 20 from line 19 (if less than zero, enter -0-) | | 21 | 0 |
| 22 | Subtract line 21 from line 16 (if less than zero, enter -0-) | | 22 | 0 |
| 23 | For purposes of this line only, recompute the amount on line 11, Form 4626, by using zero on line 6, Form 4626, and enter the result here | 23 — 0 | | |
| 24 | Multiply line 23 by 10% (.10) | | 24 | 0 |
| 25 | Net income tax (from line 12, page 1) | | 25 | 0 |
| 26 | General business credit (from line 15, page 1) | | 26 | 0 |
| 27 | Subtract line 26 from line 25 | | 27 | 0 |
| 28 | Subtract line 24 from line 27 | | 28 | 0 |
| 29 | Enter the smallest of line 18, line 22, or line 28 | | 29 | 0 |
| 30 | Subtract line 29 from line 17 | | 30 | 0 |
| 31 | Enter the greater of line 30 or line 13, page 1 | | 31 | 0 |
| 32 | Subtract line 31 from line 25 | | 32 | 0 |
| 33 | Enter the smaller of line 32 or line 10, page 1. Enter this amount also on line 15, page 1, instead of the amount previously figured on that line. Write "Sec. 38(c)(2)" in the margin next to your entry on line 15, page 1 | | 33 | 0 |
| 34 | If line 32 is greater than line 33, enter the excess here (see instructions) | | 34 | 0 |

After Carryback

Form **4626**

Department of the Treasury Internal Revenue Service

# Alternative Minimum Tax – Corporations

(including environmental tax)

▶ See separate instructions.

▶ Attach to the corporation's tax return.

OMB No. 1545-017?

**1994**

Name: H. F. AHMANSON & CO & CONSOLIDATED SUBS

Employer identification number: 95-0479700

| | | | | |
|---|---|---|---|---|
| 1 Taxable income or (loss) before net operating loss deduction. (Important: See instructions if the corporation is subject to the environmental tax.) | | | 1 | 7,421,9 |
| 2 Adjustments and preferences: | | | | |
| a Depreciation of post-1986 property | 2a | 6,305,546 | | |
| b Amortization of certified pollution control facilities | 2b | 0 | | |
| c Amortization of mining exploration and development costs | 2c | 0 | | |
| d Amortization of circulation expenditures (personal holding companies only) | 2d | 0 | | |
| e Adjusted gain or loss | 2e | -2,449,593 | | |
| f Long-term contracts | 2f | 0 | | |
| g Installment sales | 2g | 0 | | |
| h Merchant marine capital construction funds | 2h | 0 | | |
| i Section 833(b) deduction (Blue Cross, Blue Shield, and similar type organizations only) | 2i | 0 | | |
| j Tax shelter farm activities (personal service corporations only) | 2j | 0 | | |
| k Passive activities (closely held corporations and personal service corporations only) | 2k | 0 | | |
| l Loss limitations | 2l | 0 | | |
| m Depletion | 2m | 0 | | |
| n Tax-exempt interest from specified private activity bonds | 2n | 0 | | |
| o Charitable contributions | 2o | 0 | | |
| p Intangible drilling costs | 2p | 0 | | |
| q Reserves for losses on bad debts of financial institutions | 2q | 0 | | |
| r Accelerated depreciation of real property (pre-1987) | 2r | 0 | | |
| s Accelerated depreciation of leased personal property (pre-1987) (personal holding companies only) | 2s | 0 | | |
| t Other adjustments | 2t | 349,087 | | |
| u Combine lines 2a through 2t | | | 2u | 4,205,0 |
| 3 Preadjustment alternative minimum taxable income (AMTI). Combine lines 1 and 2u | | | 3 | 11,627,03 |
| 4 Adjusted current earnings (ACE) adjustment: | | | | |
| a Enter the corporation's ACE from line 10 of the worksheet in the instructions | 4a | 9,628,705 | | |
| b Subtract line 3 from line 4a. If line 3 exceeds line 4a, enter the difference as a negative amount (see instructions for examples) | 4b | -1,998,303 | | |
| c Multiply line 4b by 75% (.75). Enter the result as a positive amount | 4c | 1,498,727 | | |
| d Enter the excess, if any, of the corporation's total increases in AMTI from prior year ACE adjustments over its total reductions in AMTI from prior year ACE adjustments (see instructions). Note: You must enter an amount on line 4d (even if line 4b is positive) | 4d | 11,367,952 | | |
| e ACE adjustment: • If you entered a positive number or zero on line 4b, enter the amount from line 4c here as a positive amount. • If you entered a negative number on line 4b, enter the smaller of line 4c or line 4d here as a negative amount. | | | 4e | -1,498,72 |
| 5 Combine lines 3 and 4e. If zero or less, stop here; the corporation does not owe alternative minimum tax | | | 5 | 10,128,28 |
| 6 Alternative tax net operating loss deduction (see instructions) | | | 6 | 9,115,45 |
| 7 Alternative minimum taxable income. Subtract line 6 from line 5 | | | 7 | 1,012,82 |

After Carryback

H. F. AHMANSON & CO & CONSOLIDATED SUBS 95-0479700

Form 4626 (1994) Page

| | | | |
|---|---|---|---|
| 8 | Enter the amount from line 7 (alternative minimum taxable income) | 8 | 1,012,82 |
| 9 | **Exemption phase-out computation** (if line 8 is $310,000 or more, skip lines 9a and 9b and enter -0- on line 9c): | | |
| a | Subtract $150,000 from line 8 (if you are completing this line for a member of a controlled group, see instructions). If zero or less, enter -0- ... 9a 0 | | |
| b | Multiply line 9a by 25% (.25) ... 9b 0 | | |
| c | Exemption. Subtract line 9b from $40,000 (if you are completing this line for a member of a controlled group, see instructions). If zero or less, enter -0- | 9c | 0 |
| 10 | Subtract line 9c from line 8. If zero or less, enter -0- | 10 | 1,012,829 |
| 11 | Multiply line 10 by 20% (.20) | 11 | 202,566 |
| 12 | Alternative minimum tax foreign tax credit. See instructions for limitations. | 12 | 0 |
| 13 | Tentative minimum tax. Subtract line 12 from line 11 | 13 | 202,566 |
| 14 | Regular tax liability before all credits except the foreign tax credit and possessions tax credit | 14 | 0 |
| 15 | **Alternative minimum tax.** Subtract line 14 from line 13. Enter the result on the appropriate line of the corporation's income tax return (e.g., Form 1120, Schedule J, line 9a). If zero or less, enter -0- | 15 | 202,566 |
| 16 | **Environmental tax.** Subtract $2 million from line 5 (figured without the corporation's environmental tax deduction). Multiply the excess, if any, by 0.12% (.0012). Enter the result here and on the appropriate line of the corporation's income tax return (e.g., Form 1120, Schedule J, line 9b). If you are completing this line for a member of a controlled group, see the instructions | 16 | 9,755 |

After Carryback

95-0479700 Page

H. F. AHMANSON & CO & CONSOLIDATED SUBS

## Adjusted Current Earnings Worksheet

▶ See ACE Worksheet instructions.

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Pre-adjustment AMTI. Enter the amount from line 3 of Form 4626 | | | | 1 | 11,527,00 |
| 2 | ACE depreciation adjustment: | | | | | |
| a | AMT depreciation | | 2a | 57,277,155 | | |
| b | ACE depreciation: | | | | | |
| | (1) Post-1993 property | 2b(1) 51,415,040 | | | | |
| | (2) Post-1989, pre-1994 property | 2b(2) 2,640,865 | | | | |
| | (3) Pre-1990 MACRS property | 2b(3) 17,419 | | | | |
| | (4) Pre-1990 original ACRS property | 2b(4) 0 | | | | |
| | (5) Property described in sections 168(f)(1) through (4) | 2b(5) 0 | | | | |
| | (6) Other property | 2b(6) 248,030 | | | | |
| | (7) Total ACE depreciation. Add lines 2b(1) through 2b(6) | | 2b(7) | 54,321,354 | | |
| c | ACE depreciation adjustment. Subtract line 2b(7) from line 2a | | | | 2c | 2,955,801 |
| 3 | Inclusion in ACE of items included in earnings and profits (E&P): | | | | | |
| a | Tax-exempt interest income | | 3a | 0 | | |
| b | Death benefits from life insurance contracts | | 3b | 0 | | |
| c | All other distributions from life insurance contracts (including surrenders) | | 3c | 0 | | |
| d | Inside buildup of undistributed income in life insurance contracts | | 3d | 0 | | |
| e | Other items (see Regulations sections 1.56(g)-1(c)(6)(iii) through (ix) for a partial list) | | 3e | 0 | | |
| f | Total increase to ACE from inclusion in ACE of items included in E&P. Add lines 3a through 3e | | | | 3f | 0 |
| 4 | Disallowance of items not deductible from E&P: | | | | | |
| a | Certain dividends received | | 4a | 0 | | |
| b | Dividends paid on certain preferred stock of public utilities that are deductible under section 247 | | 4b | 0 | | |
| c | Dividends paid to an ESOP that are deductible under section 404(k) | | 4c | 0 | | |
| d | Nonpatronage dividends that are paid and deductible under section 1382(c) | | 4d | 0 | | |
| e | Other items (see Regulations sections 1.56(g)-1(d)(3)(i) and (ii) for a partial list) | | 4e | 0 | | |
| f | Total increase to ACE because of disallowance of items not deductible from E&P. Add lines 4a through 4e | | | | 4f | 0 |
| 5 | Other adjustments based on rules for figuring E&P: | | | | | |
| a | Intangible drilling costs | | 5a | 0 | | |
| b | Circulation expenditures | | 5b | 0 | | |
| c | Organizational expenditures | | 5c | 0 | | |
| d | LIFO inventory adjustments | | 5d | 0 | | |
| e | Installment sales | | 5e | 0 | | |
| f | Total other E&P adjustments. Combine lines 5a through 5e | | | | 5f | 0 |
| 6 | Disallowance of loss on exchange of debt pools | | | | 6 | 0 |
| 7 | Acquisition expenses of life insurance companies for qualified foreign contracts | | | | 7 | 0 |
| 8 | Depletion | | | | 8 | 0 |
| 9 | Basis adjustments in determining gain or loss from sale or exchange of pre-1994 property | | | | 9 | -4,954,104 |
| 10 | Adjusted current earnings. Combine lines 1, 2c, 3f, 4f, and 5f through 9. Enter the result here and on line 4a of Form 4626 | | | | 10 | 9,628,705 |

After Carrybac

Form **8827** Credit For Prior Year Minimum Tax – Corporations

OMB No. 1545-1257

**1994**

Department of the Treasury
Internal Revenue Service

►Attach to the corporation's tax return.

Name: H. F. AHMANSON & CO & CONSOLIDATED SUBS

Employer identification number: 95-0479700

| | | | |
|---|---|---|---|
| 1 | Alternative minimum tax for 1993. Enter the amount from line 16 of the 1993 Form 4626 | 1 | 917,423 |
| 2 | Minimum tax credit carryforward from 1993. Enter the amount from line 9 of the 1993 Form 8827 | 2 | 0 |
| 3 | Enter any 1993 unallowed credit for fuel produced from a nonconventional source and any 1993 unallowed orphan drug credit. See instructions. | 3 | 0 |
| 4 | Add lines 1, 2, and 3 | 4 | 917,423 |
| 5 | Enter the corporation's 1994 regular income tax liability minus allowable tax credits. See instructions. | 5 | 0 |
| 6 | Enter the tentative minimum tax from line 13 of the 1994 Form 4626 | 6 | 202,566 |
| 7 | Subtract line 6 from line 5. If zero or less, enter -0- | 7 | 0 |
| 8 | **Minimum tax credit.** Enter the smaller of line 4 or line 7. Also enter this amount on the appropriate line of the corporation's income tax return (e.g., Form 1120, Schedule J, line 4i). If the corporation had a post-1986 ownership change or has preacquisition excess credits, see instructions | 8 | 0 |
| 9 | **Minimum tax credit carryforward to 1995.** Subtract line 8 from line 4. See instructions | 9 | 917,423 |

## After Carryback

H.F Ahmanson & Consolidated Subs. 95-0479700
1996 Net Operating Loss Carryback

| NOL Carryback | Regular Tax | AMT Tax |
|---|---|---|
| Loss generated in 1996 | -151,915,733 | -153,021,160 |
| Loss utilized in 1993 | 36,487,124 | 41,871,174 |
| Loss carryback to 1994 | -115,428,609 | -111,149,986 |
| Loss utilized in 1994 | 7,421,968 | 9,115,453 |
| Loss carryback to 1995 | -108,006,641 | -102,034,533 |
| Loss utilized in 1995 | -108,006,641 | -102,034,533 |

June 2005 Claim for Tax Year 1994

June 2005 Claim for Tax Year 1994

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No 1545-0132

For tax year ending ▶ DECEMBER 1994 (Enter month and year.)

Please Type or Print

Name: H.F. AHMANSON & CO. & CONSOLIDATED SUBSIDIARIES

Employer identification number: 95-0479700

Number, street, and room or suite no. (If a P.O. box, see instructions.): C/O WASHINGTON MUTUAL, 999 THIRD AVENUE, SUITE 1500

Telephone number (optional): (206) 377-4564

City or town, state, and ZIP code: SEATTLE, WA 98104

Enter name and address used on original return (If same as above, write "Same.")

H.F. AHMANSON & CO & CONS SUBS., 4900 RIVERGRADE ROAD, IRWINDALE, CA 91706

Internal Revenue Service Center where original return was filed ▶ FRESNO, CALIFORNIA

## Fill in applicable items and use Part II on the back to explain any changes

| **Part I** Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 0 | 0 | 0 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 0 | 0 | 0 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | -4,604,463 | -878,882,050 | -883,486,513 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 1,113,787 | -1,113,787 | 0 |
| **Payments and Credits (see instructions)** | | | | |
| 5a Overpayment in prior year allowed as a credit | 5a | 0 | 0 | 0 |
| b Estimated tax payments | 5b | 0 | 0 | 0 |
| c Refund applied for on Form 4466 | 5c | 0 | 0 | 0 |
| d Subtract line 5c from the sum of lines 5a and 5b | 5d | 0 | 0 | 0 |
| e Tax deposited with Form 7004 | 5e | 0 | 0 | 0 |
| f Credit from Form 2439 | 5f | 0 | 0 | 0 |
| g Credit for Federal tax on fuels | 5g | 0 | 0 | 0 |
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | | | 1,113,787 |
| 7 Add lines 5d through 6, column (c) | 7 | | | 1,113,787 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 0 |
| 9 Subtract line 8 from line 7 | 9 | | | 1,113,787 |
| **Tax Due or Overpayment (see instructions)** | | | | |
| 10 Tax due. Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" ▶ | 10 | | | 0 |
| 11 Overpayment. Subtract line 4, column (c), from line 9 ▶ | 11 | | | 1,113,787 |
| 12 Enter the amount of line 11 you want: Credited to 20 ___ estimated tax ▶ Refunded ▶ | 12 | | | 1,113,787 |

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer | 6/27/05 Date | ▶ Senior Vice Pres, as Successor in Interest Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

For Privacy Act and Paperwork Reduction Act Notice, see page 4. (HTA) Form **1120X** (Rev. 12-2004)

Form 1120X (Rev. 12-2004) H.F. AHMANSON & CO. & CONSOLIDATED SUBSIDIA 95-0479700 Page 2

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here ▶ ☐

THIS RETURN IS AMENDED TO CLAIM THE LOSS ON THE ABANDONMENT OF BRANCHING RIGHTS AS AN ORDINARY LOSS UNDER IRC SECTION 165.; THE AMORTIZATION FOR RAP RIGHTS UNDER IRC SECTION 167; AND TO DELETE THE 1994 ENVIRONMENTAL TAX AND NOL DEDUCTED. THE TOTAL AMOUNT OF IRC SECTION 165 LOSS IS $878,882,000. AND AMORTIZATION IS SHOWN ON THE ATTACHED STATEMENTS. THE ADJUSTMENTS ARE AS FOLLOWS:

BREAKDOWN OF CHANGE:

1. ORDINARY LOSS ON ABANDONMENT OF BRANCHING RIGHTS:

| | |
|---|---|
| Bowery Savings Bank | $(165,737,925) |
| Century Savings & Loan | $(182,200,000) |
| Texas and Illinois Savings & Loan Associations | $(227,181,000) |
| Missouri and Florida Savings & Loan Associations | $(268,948,125) |
| Ohio Savings & Loan Associations | $( 34,815,000) |
| TOTAL ORDINARY LOSS | $(878,882,000) |

Form **1120X** (Rev. 12-2004)

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Bowery, a New York Thrift Institution

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home amortization and loss deductions relating to contractual rights acquired pursuant to Home's acquisition of The Bowery Savings Bank ("Bowery"), an FDIC-insured, New York-chartered, mutual savings bank and Bowery's conversion to a federally chartered savings bank. Details of the loss and deductions in issue are set forth below.

Background

1. The Acquisition. On October 5, 1987, Home signed an acquisition agreement to acquire all of the stock of The Bowery Savings Bank ("Bowery"), an FDIC-insured, state chartered (New York), mutual savings bank with a negative net worth. Just prior to that agreement, private investors had purchased Bowery in a supervisory transaction. Pursuant to that supervisory transaction, Bowery and the FDIC entered into an assistance agreement. Because of that assistance agreement, Home's stock purchase was not final until the FDIC and Home agreed to amendments to the assistance agreement. The assistance agreement was amended (the "Amended Assistance Agreement") -- and Home's stock purchase became final -- on January 29, 1988.

Upon consummation of the stock purchase, Bowery became a wholly owned indirect subsidiary of Home. Home's stock purchase resulted in $165,737,925 in goodwill. Until 1992, Bowery's books were separate from Home's and Home accounted for that goodwill on Bowery's books.

In April 1992, Bowery's name was changed to Home Savings of America, The Bowery Division, SSB. On September 1, 1992, Bowery converted to a federally chartered savings bank, and changed its name to Home Savings of America, The Bowery Division, FSB. In connection with this conversion, the Office of Thrift Supervision ("OTS") agreed to permit Home to count -- under Regulatory Accounting Principles -- the remaining goodwill from the Bowery stock purchase toward Home's regulatory capital requirements. This right is referred to herein as the Regulatory Accounting Principles Right, or "RAP Right."

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See*

*e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the RAP Right for an amount equal to the negative value of Bowery, *i.e.*, the difference between the liabilities of the thrift and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the RAP Right, ("Purchase Price"), giving Home a cost basis in the RAP Right of $165,737,925 under Code section 1012.

Claims

1. Amortization Deduction for the RAP Right. Following the acquisition and conversion of Bowery, Home was entitled to amortization deductions under section 167 with respect to the RAP Right. Home is entitled to a section 167 amortization deduction of $165,737,925 in 1994. Alternatively, because the RAP Right initially had a fixed life, Home is entitled to a section 167 amortization deduction in 1994 in an amount equal to the amortized portion of the cost basis for 1994 for amortization of the RAP Right.

2. Loss Deduction for the RAP Right. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Right, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Right was not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Right.

3. Amortization Deduction for Other Rights Acquired. Under the Amended Assistance Agreement, in addition to the RAP Right, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those Other Rights under section 1012.

The Other Rights had determinable useful lives such that amortization deductions under section 167 are allowed for the amortization of those Other Rights. Home is entitled to such amortization deductions under section 167 in 1994.

4. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

5. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Century, a New York Thrift Institution

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home amortization and loss deductions relating to contractual rights acquired pursuant to the acquisition of Century, a New York thrift institution. Details of the loss and deductions in issue are set forth below.

Background

1. The Acquisition. On August 10, 1984, Home acquired Century Federal Savings and Loan Association ("Century"), a New York thrift institution. Home's acquisition of the New York thrift qualified as a tax-free reorganization under section 368(a)(1)(G) of the Code. The acquisition of Century was a supervisory merger arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisition, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired Century, the New York thrift was insolvent. FSLIC determined that Century had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrift.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in New York ("Branching Rights"), cash, the right to be compensated for certain future losses of the thrifts, a loan evidenced by a term note, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual right to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. This right is referred to herein as the Regulatory Accounting Principles Right, or "RAP Right." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Right over the five-year period from 1990 to 1994.

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the RAP Right from FSLIC for an amount equal to the negative value of the thrift acquired, *i.e.*, the difference between the liabilities of the thrift and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the RAP Right, ("Purchase Price"), giving Home a cost basis in the RAP Right of $182,200,000, under Code section 1012.

Alternatively, if the RAP Right is deemed, contrary to fact, to have been transferred to Century prior to the merger of the thrift into Home, Home received basis in the RAP Right under Code section 362(b). The RAP Right constituted property received by Century from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the RAP Right was excludable from the income of the thrift under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. Century received basis in the RAP Right equal to the fair market value of the RAP Right on the date received. Home's adjusted basis in the RAP Right received from Century was the same as the basis of that asset in the hands of the thrift immediately before the transfer. I.R.C. § 362(b).

Claims

1. Amortization Deduction for the RAP Right. Following the acquisition of Century, Home was entitled to amortization deductions under section 167 with respect to the RAP Right. As a result of the accelerated phase-out of the RAP Right under FIRREA, Home is entitled to a section 167 amortization deduction of $25,811,667 in 1994. Alternatively, because the RAP Right initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $4,555,000 in 1994 for amortization of the RAP Right.

2. Loss Deduction for the RAP Right. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Right, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Right was not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Right.

3. Amortization Deduction for Other Rights Acquired. Under the Assistance Agreement, in addition to Branching Rights and the RAP Right, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home for Century, was attributable to Other Rights, Home acquired a cost basis in those Other Rights under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to Century before the supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

The Other Rights had determinable useful lives such that amortization deductions under section 167 are allowed for the amortization of those Other Rights. Home is entitled to such amortization deductions under section 167 in 1994.

4. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

5. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Abandonment Loss and Amortization Deductions
Relating to Texas and Illinois Thrift Institutions

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home an abandonment loss and amortization deductions for contractual rights acquired pursuant to the acquisition of Texas and Illinois thrift institutions. Details of the loss and deductions in issue are set forth below. This claim is a substitute claim to the Form 1120X for 1994 filed on December 19, 2002, which claim the IRS disallowed in full on March 1, 2005.

Background

1. The Acquisition. On January 15, 1982, Home acquired Royal Federal Savings and Loan Association and El Centro Federal Savings and Loan Association, both Texas thrift institutions, and Hyde Park Federal Savings and Loan Association, an Illinois thrift institution. Home's acquisition of the Texas and Illinois thrifts qualified as tax-free reorganizations under section 368(a)(1)(G) of the Code. The acquisition of the Texas and Illinois thrift institutions was a supervisory merger arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisition, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired the Texas and Illinois thrift institutions, each of the three was insolvent. FSLIC determined that the Texas and Illinois thrift institutions had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrifts.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in Texas and Illinois, cash, the right to be compensated for certain future losses of the thrifts, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual rights to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. These rights are referred to herein as the Regulatory Accounting Principles Rights,

or "RAP Rights." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Rights over the five-year period from 1990 to 1994.

The principal form of FSLIC Assistance that Home sought and received in connection with the acquisition of the Texas and Illinois thrifts was the right to establish branches in Texas ("Texas Branching Rights") and Illinois ("Illinois Branching Rights"). At the time of the acquisition, FHLBB regulations generally prohibited a thrift from owning or establishing out-of-state branches, *i.e.*, branches outside of its home state. In March 1981, FHLBB created an exception to this general rule to permit thrifts to acquire out-of-state branches via supervisory mergers. In September 1981, FHLBB further amended its regulations to permit thrifts who acquired out-of-state branches via supervisory mergers to establish (subject to FHLBB's approval) new branches in that other state. Therefore, at the time of the acquisition, interstate branching rights were valuable assets that thrifts could obtain only in the context of a supervisory merger.

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the Branching Rights and RAP Rights from FSLIC for an amount equal to the negative value of the thrifts it acquired, *i.e.*, the difference between the liabilities of the thrifts and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the Branching Rights and RAP Rights, ("Purchase Price"), giving Home a cost basis in the Branching Rights and RAP Rights of $227,181,000, under Code section 1012.

Alternatively, if the Branching Rights and RAP Rights are deemed, contrary to fact, to have been transferred to the Texas and Illinois thrifts prior to the merger of the thrifts into Home, Home received basis in these rights under Code section 362(b). The Branching Rights and RAP Rights constituted property received by the Texas and Illinois thrifts from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the Branching Rights and RAP Rights was excludable from the income of the thrifts under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. The Texas and Illinois thrifts received basis in the Branching Rights and RAP Rights equal to the fair market value of these rights on the date received, $227,181,000. Home's adjusted basis in the Branching Rights and RAP Rights received from the Texas and Illinois thrifts was the same as the basis of those assets in the hands of the thrifts immediately before the transfer. I.R.C. § 362(b).

3. Abandonment. In 1994, Home abandoned its Illinois Branching Rights. At that time, Home left the Illinois branch banking market with no intention of reestablishing any other branches in Illinois. Home has not reentered the Illinois branch banking market since that time.

Claims

1. Loss on Abandonment of Branching Rights. Home is entitled to a refund of tax resulting from a section 165 loss in the amount of $74,871,163 sustained upon the abandonment of its Illinois Branching Rights in 1994. Because Home made the affirmative decision to leave the Illinois market, sold or otherwise divested itself of all of the Illinois branches, and actually left that market in 1994, it thereby abandoned its Illinois Branching Rights in 1994. Home is therefore entitled to a deduction under section 165 in that year.

2. Amortization Deduction for the Texas and Illinois RAP Rights. Following the acquisition of the Texas and Illinois thrifts, Home was entitled to amortization deductions under section 167 with respect to the RAP Rights. As a result of the accelerated phase-out of the RAP Rights under FIRREA, Home is entitled to a section 167 amortization deduction of $30,290,800 in 1994. Alternatively, because the RAP Rights initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $5,679,525 in 1994 for amortization of the RAP Rights.

3. Loss Deduction for the RAP Rights. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Rights, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Rights were not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's basis in the RAP Rights.

4. Loss Deductions or Amortization Deductions for Other Rights Acquired. Under the Assistance Agreement, in addition to the Branching Rights, and the RAP Rights, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those assets under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to the Texas and Illinois branches before the supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

If the Other Rights had a determinable useful life such that amortization deductions under section 167 are allowed for those Other Rights, Home is entitled to such amortization deductions under section 167 in 1994. If the Other Rights did not have a determinable useful life, so that amortization deductions were not permitted with respect to those rights, Home is entitled to a loss deduction under section 165 in 1994 if such Other Rights were abandoned or became worthless in that year.

5. Reduction in the Gain on the Sale of the Illinois Branches. (Alternative Claim) To the extent Home did not recover the basis of the assets relating to the Illinois branches as loss deductions under section 165, or through amortization deductions under section 167, such basis amounts are includible in the adjusted basis of the Illinois branches sold by Home, and Home is entitled to a corresponding adjustment to the gain or loss recognized under section 1001 on the sale of such branches in 1994.

6. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

7. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Missouri and Florida Thrift Institutions

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home amortization and loss deductions relating to contractual rights acquired pursuant to the acquisition of Missouri and Florida thrift institutions. Details of the loss and deductions in issue are set forth below.

## Background

1. The Acquisition. On December 17, 1981, Home acquired Security Federal Savings and Loan Association and Hamiltonian Federal Savings and Loan Association, both Missouri thrift institutions, and Southern Federal Savings and Loan Association, a Florida thrift institution. Home's acquisition of the Missouri and Florida thrifts was accomplished through a two-step merger transaction. The Missouri thrifts were first merged into the Florida thrift. The Florida thrift was then merged into Home. Both mergers qualified as tax-free reorganizations under section 368(a)(1)(G) of the Code. The acquisition of the Missouri and Florida thrift institutions was a supervisory merger arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisition, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired the Missouri and Florida thrift institutions, each of the three was insolvent. FSLIC determined that the Missouri and Florida thrift institutions had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrifts.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in Missouri and Florida ("Branching Rights"), a small amount of cash, the right to be compensated for certain future losses of the thrifts, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual rights to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. These rights are referred to herein as the

Regulatory Accounting Principles Rights, or "RAP Rights." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Rights over the five-year period from 1990 to 1994.

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the RAP Rights from FSLIC for an amount equal to the negative value of the thrifts it acquired, *i.e.*, the difference between the liabilities of the thrifts and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the RAP Rights, ("Purchase Price"), giving Home a cost basis in the RAP Rights of $268,948,125, under Code section 1012.

Alternatively, if the RAP Rights are deemed, contrary to fact, to have been transferred to the Missouri and Florida thrifts prior to the merger of the thrifts into Home, Home received basis in the RAP Rights under Code section 362(b). The RAP Rights constituted property received by the Missouri and Florida thrifts from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the RAP Rights was excludable from the income of the thrifts under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. The Missouri and Florida thrifts received basis in the RAP Rights equal to the fair market value of the RAP Rights on the date received, $268,948,125. Home's adjusted basis in the RAP Rights received from the Missouri and Florida thrifts was the same as the basis of that asset in the hands of the thrifts immediately before the transfer. I.R.C. § 362(b).

Claims

1. Amortization Deduction for the RAP Rights. Following the acquisition of the Missouri and Florida thrifts, Home was entitled to amortization deductions under section 167 with respect to the RAP Rights. As a result of the accelerated phase-out of the RAP Rights under FIRREA, Home is entitled to a section 167 amortization deduction of $35,859,750 in 1994. Alternatively, because the RAP Rights initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $6,723,703 in 1994 for amortization of the RAP Rights.

2. Loss Deduction for the RAP Rights. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Rights, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Rights were not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Rights.

3. Amortization Deduction for Other Rights Acquired. Under the Assistance Agreement, in addition to Branching Rights and RAP Rights, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those Other Rights under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to the Missouri and Florida thrifts before the

supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

The Other Rights had determinable useful lives such that amortization deductions under section 167 are allowed for the amortization of those Other Rights. Home is entitled to such amortization deductions under section 167 in 1994.

4. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

5. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Ohio Thrift Institutions

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home an abandonment loss and amortization deductions for contractual rights acquired pursuant to the acquisition of Ohio thrift institutions. Details of the loss and deductions in issue are set forth below.

<u>Background</u>

1. <u>The Acquisition.</u> On May 22, 1985, Home acquired Permanent Savings and Loan, Oxford Savings Association, Home Federal Savings and Loan, and American Savings Bank, all Ohio thrift institutions. On June 20, 1985, Home acquired Savings One Association, also an Ohio thrift institution. Home's acquisitions of the Ohio thrifts qualified as tax-free reorganizations under section 368(a)(1)(G) of the Code. The acquisitions of the Ohio thrifts were supervisory mergers arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisitions, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired the Ohio thrifts, the thrifts were insolvent. FSLIC determined that the Ohio thrifts had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrifts.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in Ohio ("Branching Rights"), cash, the right to be compensated for certain future losses of the thrifts, a loan evidenced by a term note, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual right to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. This right is referred to herein as the Regulatory Accounting Principles Right, or "RAP Right." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Right over the five-year period from 1990 to 1994.

As noted above, one form of FSLIC Assistance that Home sought and received in connection with the acquisition of the Ohio thrifts was Branching Rights. At the time of the acquisition, FHLBB regulations generally prohibited a thrift from owning or establishing out-of-state branches, *i.e.*, branches outside of its home state. In March 1981, FHLBB created an exception to this general rule to permit thrifts to acquire out-of-state branches via supervisory mergers. In September 1981, FHLBB further amended its regulations to permit thrifts who acquired out-of-state branches via supervisory mergers to establish (subject to FHLBB's approval) new branches in that other state.

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the Ohio Branching Right and RAP Right from FSLIC for an amount equal to the negative value of the thrifts it acquired, *i.e.*, the difference between the liabilities of the thrifts and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the Ohio Branching Right and RAP Right, ("Purchase Price"), giving Home a cost basis in the Ohio Branching Right and RAP Right of $34,815,000 under Code section 1012.

Alternatively, if the Ohio Branching Right and RAP Right are deemed, contrary to fact, to have been transferred to the Ohio thrifts prior to the merger of the thrifts into Home, Home received basis in the Ohio Branching Right and RAP Right under Code section 362(b). The Ohio Branching Right and RAP Right constituted property received by the Ohio thrifts from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the Ohio Branching Right and RAP Right was excludable from the income of the thrifts under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. The Ohio thrifts received basis in the Ohio Branching Right and RAP Right equal to the fair market value of the Ohio Branching Right and RAP Right on the date received. Home's adjusted basis in the Ohio Branching Right and RAP Right was the same as the basis of those assets in the hands of the thrifts immediately before the transfer. I.R.C. § 362(b).

3. Abandonment. In 1994, Home's management made the decision to terminate its branch banking operations in Ohio. In 1994 and 1995, Home engaged in a series of transactions in which it either exchanged or sold each of its branches in Ohio. At that time, Home left the Ohio branch banking market with no intention of reestablishing any other branches in Ohio. Home has not reentered the Ohio branch banking market since that time.

## Claims

1. Amortization Deduction for the Ohio RAP Right. Following the acquisition of the Ohio thrifts, Home was entitled to amortization deductions under section 167 with respect to the RAP Right. As a result of the accelerated phase-out of the RAP Right under FIRREA, Home is entitled to a section 167 amortization deduction of $5,077,188 in 1994. Alternatively, because the RAP Right initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $870,375 in 1994 for amortization of the RAP Right.

2. Loss Deduction for the RAP Right. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Right, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Right was not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Right.

3. Loss on Abandonment of Branching Rights. Home is entitled to a refund of tax resulting from a section 165 loss sustained upon the abandonment of its Ohio Branching Rights in 1994. Because Home made the affirmative decision to leave the Ohio market and it sold or otherwise divested itself of certain branches in 1994, Home is entitled to an abandonment loss deduction under section 165 in that year with respect to the divested branches.

4. Loss Deductions or Amortization Deductions for Other Rights Acquired. Under the Assistance Agreement, in addition to the Branching Rights, and the RAP Right, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those assets under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to the Ohio branches before the supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

If the Other Rights had a determinable useful life such that amortization deductions under section 167 are allowed for those Other Rights, Home is entitled to such amortization deductions under section 167 in 1994. If the Other Rights did not have a determinable useful life, so that amortization deductions were not permitted with respect to those rights, Home is entitled to a loss deduction under section 165 in 1994 if such Other Rights were abandoned or became worthless in that year.

5. Reduction in the Gain on the Sale of the Ohio Branches. (Alternative Claim) To the extent Home did not recover the basis of the assets relating to the Ohio branches as loss deductions under section 165, or through amortization deductions under section 167, such basis amounts are includible in the adjusted basis of the Ohio branches sold by Home, and Home is entitled to a corresponding adjustment to the gain or loss recognized under section 1001 on the sale of such branches in 1994.

6. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

7. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

June 2006 Claim for Tax Year 1994

(by Washington Mutual Bank)

June 2006 Claim for Tax Year 1994 (by Wash. Mutual Bank)

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ 12/1994 (Enter month and year.)

Please Type or Print

Name: H.F. Ahmanson & Co. & Cons. Subs., by Washington Mutual Bank F.A. as successor*

Employer identification number: 95-0479700

Number, street, and room or suite no. (If a P.O. box, see instructions.): c/o Washington Mutual, Inc.; PO Box 834, FIS 1520

Telephone number (optional):

City or town, state, and ZIP code: Seattle, WA 98111

Enter name and address used on original return (If same as above, write "Same.")

H.F. Ahmanson & Co. & Cons. Subs.; 4900 Rivergrade Road; Irwindale, CA 91706

Internal Revenue Service Center where original return was filed ▶ Ogden, UT

**Fill in applicable items and use Part II on the back to explain any changes**

| **Part I** Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 3,510,549,140 | 0 | 3,510,549,140 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 3,510,549,140 | 896,450,125 | 4,406,999,265 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 0 | -896,450,125 | -896,450,125 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 556,661 | -556,661 | 0 |
| **Payments and Credits** (see instructions) | | | | |
| 5 a Overpayment in prior year allowed as a credit | 5a | 740,825 | 0 | 740,825 |
| b Estimated tax payments | 5b | 0 | 0 | 0 |
| c Refund applied for on Form 4466 | 5c | 0 | 0 | 0 |
| d Subtract line 5c from the sum of lines 5a and 5b | 5d | 740,825 | 0 | 740,825 |
| e Tax deposited with Form 7004 | 5e | 0 | 0 | 0 |
| f Credit from Form 2439 | 5f | 0 | 0 | 0 |
| g Credit for Federal tax on fuels | 5g | 0 | 0 | 0 |
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | | | 0 |
| 7 Add lines 5d through 6, column (c) | 7 | | | 740,825 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 289,883 |
| 9 Subtract line 8 from line 7 | 9 | | | 450,942 |
| **Tax Due or Overpayment** (see instructions) | | | | |
| 10 **Tax due.** Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" ▶ | 10 | | | 0 |
| 11 **Overpayment.** Subtract line 4, column (c), from line 9 ▶ | 11 | | | 450,942 |
| 12 Enter the amount of line 11 you want: **Credited to 20** ___ **estimated tax** ▶ **Refunded** ▶ | 12 | | | 450,942 |

INTERNAL REVENUE SERVICE-FA RECEIVED JUN 30 2006 SEATTLE, WA

**Sign Here** Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer Date 6/30/06 ▶ Sr. V.P. Title

**Paid Preparer's Use Only** Preparer's signature ▶ Date Check if self-employed ☐ Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ EIN Phone no.

**For Privacy Act and Paperwork Reduction Act Notice, see page 4.** Form **1120X** (Rev. 12-2004)

(HTA)

Form 1120X (Rev. 12-2004) H.F. Ahmanson & Co. & Cons. Subs., by Washington M 95-0479700 Page **2**

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here ▶ ☐

BRANCHING RIGHTS ABANDONMENT LOSS - STATEMENT 1

*On October 1, 1998, Home Savings of America was merged with and into Washington Mutual Bank F.A.

Washington Mutual Bank F.A. is the successor in interest to Home Savings of America.

Form **1120X** (Rev. 12-2004)

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Bowery, a New York Federally Chartered Savings Bank

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home amortization and loss deductions relating to contractual rights acquired pursuant to Home's acquisition of The Bowery Savings Bank ("Bowery") and Bowery's conversion to a federally chartered savings bank. Details of the deductions in issue are set forth below.

Background

1. The Acquisition. On October 5, 1987, Home signed an acquisition agreement to acquire all of the stock of The Bowery Savings Bank ("Bowery"), an FDIC-insured, New York-chartered, mutual savings bank. Before that agreement, private investors had purchased Bowery in a supervisory transaction. In that supervisory transaction, Bowery and the FDIC entered into an assistance agreement. Because of that assistance agreement, Home's stock purchase was not final until the FDIC and Home agreed to amendments to the assistance agreement. The assistance agreement was amended (the "Amended Assistance Agreement") -- and Home's stock purchase became final -- on January 29, 1988.

Upon consummation of the stock purchase, Bowery became a wholly owned indirect subsidiary of Home. Home's stock purchase resulted in $183,306,000 in goodwill, which Bowery could use for capital compliance purposes under the Amended Assistance Agreement. Until 1992, Bowery's books were separate from Home's books and Home accounted for that goodwill on Bowery's books.

In April 1992, Bowery's name was changed to Home Savings of America, The Bowery Division, SSB. On September 1, 1992, Bowery converted to a federally chartered savings bank, and changed its name to Home Savings of America, The Bowery Division, FSB. In connection with this conversion, Home counted -- under Regulatory Accounting Principles -- the remaining goodwill from the Bowery stock purchase toward Home's regulatory capital requirements. This right is referred to herein as the Regulatory Accounting Principles Right, or "RAP Right." Under the Amended Assistance Agreement, in addition to the RAP Right, Home acquired other rights ("Other Rights").

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the

353302.1

amount paid for the property. Home purchased the RAP Right and Other Rights, giving Home a cost basis in the RAP Right and Other Rights of $183,306,000 under Code section 1012.

Claims

1. Amortization Deduction for the RAP Right. Following the acquisition and conversion of Bowery, Home was entitled to amortization deductions under section 167 with respect to the RAP Right. Home is entitled to a section 167 amortization deduction of $183,306,000 in 1994. Alternatively, because the RAP Right initially had a fixed life, Home is entitled to a section 167 amortization deduction in 1994 in an amount equal to the amortized portion of the cost basis for 1994 for amortization of the RAP Right.

2. Loss Deduction for the RAP Right. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Right, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Right was not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Right.

3. Amortization Deduction for Other Rights Acquired. Under the Amended Assistance Agreement, in addition to the RAP Right, Home acquired Other Rights. To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those Other Rights under section 1012.

The Other Rights had determinable useful lives such that amortization deductions under section 167 are allowed for the amortization of those Other Rights. Home is entitled to such amortization deductions under section 167 in 1994.

4. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

5. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Century, a New York Thrift Institution

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home amortization and loss deductions relating to contractual rights acquired pursuant to the acquisition of Century, a New York thrift institution. Details of the loss and deductions in issue are set forth below.

<u>Background</u>

1. <u>The Acquisition.</u> On August 10, 1984, Home acquired Century Federal Savings and Loan Association ("Century"), a New York thrift institution. Home's acquisition of the New York thrift qualified as a tax-free reorganization under section 368(a)(1)(G) of the Code. The acquisition of Century was a supervisory merger arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisition, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired Century, the New York thrift was insolvent. FSLIC determined that Century had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrift.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in New York ("Branching Rights"), cash, the right to be compensated for certain future losses of the thrifts, a loan evidenced by a term note, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual right to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. This right is referred to herein as the Regulatory Accounting Principles Right, or "RAP Right." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Right over the five-year period from 1990 to 1994.

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the RAP Right from FSLIC for an amount equal to the negative value of the thrift acquired, *i.e.*, the difference between the liabilities of the thrift and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the RAP Right, ("Purchase Price"), giving Home a cost basis in the RAP Right of $182,200,000, under Code section 1012.

Alternatively, if the RAP Right is deemed, contrary to fact, to have been transferred to Century prior to the merger of the thrift into Home, Home received basis in the RAP Right under Code section 362(b). The RAP Right constituted property received by Century from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the RAP Right was excludable from the income of the thrift under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. Century received basis in the RAP Right equal to the fair market value of the RAP Right on the date received. Home's adjusted basis in the RAP Right received from Century was the same as the basis of that asset in the hands of the thrift immediately before the transfer. I.R.C. § 362(b).

Claims

1. Amortization Deduction for the RAP Right. Following the acquisition of Century, Home was entitled to amortization deductions under section 167 with respect to the RAP Right. As a result of the accelerated phase-out of the RAP Right under FIRREA, Home is entitled to a section 167 amortization deduction of $25,811,667 in 1994. Alternatively, because the RAP Right initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $4,555,000 in 1994 for amortization of the RAP Right.

2. Loss Deduction for the RAP Right. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Right, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Right was not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Right.

3. Amortization Deduction for Other Rights Acquired. Under the Assistance Agreement, in addition to Branching Rights and the RAP Right, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home for Century, was attributable to Other Rights, Home acquired a cost basis in those Other Rights under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to Century before the supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

The Other Rights had determinable useful lives such that amortization deductions under section 167 are allowed for the amortization of those Other Rights. Home is entitled to such amortization deductions under section 167 in 1994.

4. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

5. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Abandonment Loss and Amortization Deductions
Relating to Texas and Illinois Thrift Institutions

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home an abandonment loss and amortization deductions for contractual rights acquired pursuant to the acquisition of Texas and Illinois thrift institutions. Details of the loss and deductions in issue are set forth below. This claim is a substitute claim to the Form 1120X for 1994 filed on December 19, 2002, which claim the IRS disallowed in full on March 1, 2005.

Background

1. The Acquisition. On January 15, 1982; Home acquired Royal Federal Savings and Loan Association and El Centro Federal Savings and Loan Association, both Texas thrift institutions, and Hyde Park Federal Savings and Loan Association, an Illinois thrift institution. Home's acquisition of the Texas and Illinois thrifts qualified as tax-free reorganizations under section 368(a)(1)(G) of the Code. The acquisition of the Texas and Illinois thrift institutions was a supervisory merger arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisition, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired the Texas and Illinois thrift institutions, each of the three was insolvent. FSLIC determined that the Texas and Illinois thrift institutions had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrifts.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in Texas and Illinois, cash, the right to be compensated for certain future losses of the thrifts, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual rights to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. These rights are referred to herein as the Regulatory Accounting Principles Rights,

or "RAP Rights." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Rights over the five-year period from 1990 to 1994.

The principal form of FSLIC Assistance that Home sought and received in connection with the acquisition of the Texas and Illinois thrifts was the right to establish branches in Texas ("Texas Branching Rights") and Illinois ("Illinois Branching Rights"). At the time of the acquisition, FHLBB regulations generally prohibited a thrift from owning or establishing out-of-state branches, *i.e.*, branches outside of its home state. In March 1981, FHLBB created an exception to this general rule to permit thrifts to acquire out-of-state branches via supervisory mergers. In September 1981, FHLBB further amended its regulations to permit thrifts who acquired out-of-state branches via supervisory mergers to establish (subject to FHLBB's approval) new branches in that other state. Therefore, at the time of the acquisition, interstate branching rights were valuable assets that thrifts could obtain only in the context of a supervisory merger.

2. <u>Basis.</u> Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the Branching Rights and RAP Rights from FSLIC for an amount equal to the negative value of the thrifts it acquired, *i.e.*, the difference between the liabilities of the thrifts and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the Branching Rights and RAP Rights, ("Purchase Price"), giving Home a cost basis in the Branching Rights and RAP Rights of $227,181,000, under Code section 1012.

Alternatively, if the Branching Rights and RAP Rights are deemed, contrary to fact, to have been transferred to the Texas and Illinois thrifts prior to the merger of the thrifts into Home, Home received basis in these rights under Code section 362(b). The Branching Rights and RAP Rights constituted property received by the Texas and Illinois thrifts from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the Branching Rights and RAP Rights was excludable from the income of the thrifts under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. The Texas and Illinois thrifts received basis in the Branching Rights and RAP Rights equal to the fair market value of these rights on the date received, $227,181,000. Home's adjusted basis in the Branching Rights and RAP Rights received from the Texas and Illinois thrifts was the same as the basis of those assets in the hands of the thrifts immediately before the transfer. I.R.C. § 362(b).

3. <u>Abandonment.</u> In 1994, Home abandoned its Illinois Branching Rights. At that time, Home left the Illinois branch banking market with no intention of reestablishing any other branches in Illinois. Home has not reentered the Illinois branch banking market since that time.

/

Claims

1. Loss on Abandonment of Branching Rights. Home is entitled to a refund of tax resulting from a section 165 loss in the amount of $74,871,163 sustained upon the abandonment of its Illinois Branching Rights in 1994. Because Home made the affirmative decision to leave the Illinois market, sold or otherwise divested itself of all of the Illinois branches, and actually left that market in 1994, it thereby abandoned its Illinois Branching Rights in 1994. Home is therefore entitled to a deduction under section 165 in that year.

2. Amortization Deduction for the Texas and Illinois RAP Rights. Following the acquisition of the Texas and Illinois thrifts, Home was entitled to amortization deductions under section 167 with respect to the RAP Rights. As a result of the accelerated phase-out of the RAP Rights under FIRREA, Home is entitled to a section 167 amortization deduction of $30,290,800 in 1994. Alternatively, because the RAP Rights initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $5,679,525 in 1994 for amortization of the RAP Rights.

3. Loss Deduction for the RAP Rights. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Rights, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Rights were not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's basis in the RAP Rights.

4. Loss Deductions or Amortization Deductions for Other Rights Acquired. Under the Assistance Agreement, in addition to the Branching Rights, and the RAP Rights, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those assets under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to the Texas and Illinois branches before the supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

If the Other Rights had a determinable useful life such that amortization deductions under section 167 are allowed for those Other Rights, Home is entitled to such amortization deductions under section 167 in 1994. If the Other Rights did not have a determinable useful life, so that amortization deductions were not permitted with respect to those rights, Home is entitled to a loss deduction under section 165 in 1994 if such Other Rights were abandoned or became worthless in that year.

5. Reduction in the Gain on the Sale of the Illinois Branches. (Alternative Claim) To the extent Home did not recover the basis of the assets relating to the Illinois branches as loss deductions under section 165, or through amortization deductions under section 167, such basis amounts are includible in the adjusted basis of the Illinois branches sold by Home, and Home is entitled to a corresponding adjustment to the gain or loss recognized under section 1001 on the sale of such branches in 1994.

6. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

7. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Missouri and Florida Thrift Institutions

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home amortization and loss deductions relating to contractual rights acquired pursuant to the acquisition of Missouri and Florida thrift institutions. Details of the loss and deductions in issue are set forth below.

<u>Background</u>

1. <u>The Acquisition.</u> On December 17, 1981, Home acquired Security Federal Savings and Loan Association and Hamiltonian Federal Savings and Loan Association, both Missouri thrift institutions, and Southern Federal Savings and Loan Association, a Florida thrift institution. Home's acquisition of the Missouri and Florida thrifts was accomplished through a two-step merger transaction. The Missouri thrifts were first merged into the Florida thrift. The Florida thrift was then merged into Home. Both mergers qualified as tax-free reorganizations under section 368(a)(1)(G) of the Code. The acquisition of the Missouri and Florida thrift institutions was a supervisory merger arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisition, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired the Missouri and Florida thrift institutions, each of the three was insolvent. FSLIC determined that the Missouri and Florida thrift institutions had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrifts.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in Missouri and Florida ("Branching Rights"), a small amount of cash, the right to be compensated for certain future losses of the thrifts, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual rights to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. These rights are referred to herein as the

Regulatory Accounting Principles Rights, or "RAP Rights." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Rights over the five-year period from 1990 to 1994.

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the RAP Rights from FSLIC for an amount equal to the negative value of the thrifts it acquired, *i.e.*, the difference between the liabilities of the thrifts and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the RAP Rights, ("Purchase Price"), giving Home a cost basis in the RAP Rights of $268,948,125, under Code section 1012.

Alternatively, if the RAP Rights are deemed, contrary to fact, to have been transferred to the Missouri and Florida thrifts prior to the merger of the thrifts into Home, Home received basis in the RAP Rights under Code section 362(b). The RAP Rights constituted property received by the Missouri and Florida thrifts from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the RAP Rights was excludable from the income of the thrifts under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. The Missouri and Florida thrifts received basis in the RAP Rights equal to the fair market value of the RAP Rights on the date received, $268,948,125. Home's adjusted basis in the RAP Rights received from the Missouri and Florida thrifts was the same as the basis of that asset in the hands of the thrifts immediately before the transfer. I.R.C. § 362(b).

Claims

1. Amortization Deduction for the RAP Rights. Following the acquisition of the Missouri and Florida thrifts, Home was entitled to amortization deductions under section 167 with respect to the RAP Rights. As a result of the accelerated phase-out of the RAP Rights under FIRREA, Home is entitled to a section 167 amortization deduction of $35,859,750 in 1994. Alternatively, because the RAP Rights initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $6,723,703 in 1994 for amortization of the RAP Rights.

2. Loss Deduction for the RAP Rights. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Rights, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Rights were not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Rights.

3. Amortization Deduction for Other Rights Acquired. Under the Assistance Agreement, in addition to Branching Rights and RAP Rights, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those Other Rights under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to the Missouri and Florida thrifts before the

supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

The Other Rights had determinable useful lives such that amortization deductions under section 167 are allowed for the amortization of those Other Rights. Home is entitled to such amortization deductions under section 167 in 1994.

4. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

5. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

Amended U.S. Corporation Income Tax Return
Form 1120X
For the Tax Year Ending December 31, 1994
Amortization and Loss Deductions
Relating to Ohio Thrift Institutions

During 1994, Home Savings of America ("Home"), a federally chartered savings and loan association, was a wholly owned subsidiary of H.F. Ahmanson & Company ("Ahmanson") and a member of the affiliated group for which Ahmanson was the common parent corporation. Home is entitled to a refund for overpayment of 1994 taxes because the Internal Revenue Service ("IRS") erred by failing to allow Home an abandonment loss and amortization deductions for contractual rights acquired pursuant to the acquisition of Ohio thrift institutions. Details of the loss and deductions in issue are set forth below.

## Background

1. The Acquisition. On May 22, 1985, Home acquired Permanent Savings and Loan, Oxford Savings Association, Home Federal Savings and Loan, and American Savings Bank, all Ohio thrift institutions. On June 20, 1985, Home acquired Savings One Association, also an Ohio thrift institution. Home's acquisitions of the Ohio thrifts qualified as tax-free reorganizations under section 368(a)(1)(G) of the Code. The acquisitions of the Ohio thrifts were supervisory mergers arranged by the Federal Savings and Loan Insurance Corporation ("FSLIC") and its parent, the Federal Home Loan Bank Board ("FHLBB"). At the time of the acquisitions, there was a financial crisis in the savings and loan industry. FSLIC and the FHLBB had determined that FSLIC lacked the funds necessary to liquidate all of the failing thrifts, and therefore provided assistance ("FSLIC Assistance") to induce healthy thrifts to take over failing thrifts. FSLIC Assistance of one or more types was provided, including, but not limited to, cash, state branching rights, guarantees against losses, and the right to count the excess of the liabilities assumed over the fair market value of the identifiable assets acquired ("Supervisory Goodwill") toward regulatory capital requirements.

At the time Home acquired the Ohio thrifts, the thrifts were insolvent. FSLIC determined that the Ohio thrifts had no going concern value, and that FSLIC Assistance was required to attract a buyer for the thrifts.

Under its Assistance Agreement with FSLIC, Home received the contractual right to establish and expand into additional branches in Ohio ("Branching Rights"), cash, the right to be compensated for certain future losses of the thrifts, a loan evidenced by a term note, and certain forbearances with respect to regulatory net worth requirements. Home also received the contractual right to count the Supervisory Goodwill resulting from the acquisition to satisfy its regulatory capital requirements for 40 years. This right is referred to herein as the Regulatory Accounting Principles Right, or "RAP Right." In 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provided for an accelerated phase-out of the RAP Right over the five-year period from 1990 to 1994.

As noted above, one form of FSLIC Assistance that Home sought and received in connection with the acquisition of the Ohio thrifts was Branching Rights. At the time of the acquisition, FHLBB regulations generally prohibited a thrift from owning or establishing out-of-state branches, *i.e.*, branches outside of its home state. In March 1981, FHLBB created an exception to this general rule to permit thrifts to acquire out-of-state branches via supervisory mergers. In September 1981, FHLBB further amended its regulations to permit thrifts who acquired out-of-state branches via supervisory mergers to establish (subject to FHLBB's approval) new branches in that other state.

2. Basis. Internal Revenue Code ("Code") section 1012 provides that the basis of property is equal to the cost of that property. Treas. Reg. § 1.1012-1(a) defines cost to equal the amount paid for the property, and the amount paid includes liabilities assumed by the buyer. *See e.g. Crane v. Commissioner*, 331 U.S. 1 (1947). Home purchased the Ohio Branching Right and RAP Right from FSLIC for an amount equal to the negative value of the thrifts it acquired, *i.e.*, the difference between the liabilities of the thrifts and the fair market value of the identifiable assets, net of other consideration received from FSLIC, was the purchase price for the Ohio Branching Right and RAP Right, ("Purchase Price"), giving Home a cost basis in the Ohio Branching Right and RAP Right of $34,815,000 under Code section 1012.

Alternatively, if the Ohio Branching Right and RAP Right are deemed, contrary to fact, to have been transferred to the Ohio thrifts prior to the merger of the thrifts into Home, Home received basis in the Ohio Branching Right and RAP Right under Code section 362(b). The Ohio Branching Right and RAP Right constituted property received by the Ohio thrifts from FSLIC pursuant to section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f). The receipt of the Ohio Branching Right and RAP Right was excludable from the income of the thrifts under Code section 597(a), in effect as of the date of the merger, but gave rise to basis under Code section 362. The Ohio thrifts received basis in the Ohio Branching Right and RAP Right equal to the fair market value of the Ohio Branching Right and RAP Right on the date received. Home's adjusted basis in the Ohio Branching Right and RAP Right was the same as the basis of those assets in the hands of the thrifts immediately before the transfer. I.R.C. § 362(b).

3. Abandonment. In 1994, Home's management made the decision to terminate its branch banking operations in Ohio. In 1994 and 1995, Home engaged in a series of transactions in which it either exchanged or sold each of its branches in Ohio. At that time, Home left the Ohio branch banking market with no intention of reestablishing any other branches in Ohio. Home has not reentered the Ohio branch banking market since that time.

## Claims

1. Amortization Deduction for the Ohio RAP Right. Following the acquisition of the Ohio thrifts, Home was entitled to amortization deductions under section 167 with respect to the RAP Right. As a result of the accelerated phase-out of the RAP Right under FIRREA, Home is entitled to a section 167 amortization deduction of $5,077,188 in 1994. Alternatively, because the RAP Right initially had a 40-year life, Home is entitled to a section 167 amortization deduction of $870,375 in 1994 for amortization of the RAP Right.

2. Loss Deduction for the RAP Right. (Alternative Claim) To the extent of any remaining unamortized basis in the RAP Right, Home is entitled to a deduction for such amount in 1994, under section 165. In the alternative, if the RAP Right was not subject to amortization, Home is entitled to a loss deduction under section 165 in the amount of Home's original basis in the RAP Right.

3. Loss on Abandonment of Branching Rights. Home is entitled to a refund of tax resulting from a section 165 loss sustained upon the abandonment of its Ohio Branching Rights in 1994. Because Home made the affirmative decision to leave the Ohio market and it sold or otherwise divested itself of certain branches in 1994, Home is entitled to an abandonment loss deduction under section 165 in that year with respect to the divested branches.

4. Loss Deductions or Amortization Deductions for Other Rights Acquired. Under the Assistance Agreement, in addition to the Branching Rights, and the RAP Right, Home acquired other rights ("Other Rights"). To the extent that the amount paid by Home was attributable to Other Rights, Home acquired a cost basis in those assets under section 1012. In the alternative, if the Other Rights are deemed to have been transferred by FSLIC to the Ohio branches before the supervisory merger, Home received a basis in the Other Rights under section 362(b) in the merger.

If the Other Rights had a determinable useful life such that amortization deductions under section 167 are allowed for those Other Rights, Home is entitled to such amortization deductions under section 167 in 1994. If the Other Rights did not have a determinable useful life, so that amortization deductions were not permitted with respect to those rights, Home is entitled to a loss deduction under section 165 in 1994 if such Other Rights were abandoned or became worthless in that year.

5. Reduction in the Gain on the Sale of the Ohio Branches. (Alternative Claim) To the extent Home did not recover the basis of the assets relating to the Ohio branches as loss deductions under section 165, or through amortization deductions under section 167, such basis amounts are includible in the adjusted basis of the Ohio branches sold by Home, and Home is entitled to a corresponding adjustment to the gain or loss recognized under section 1001 on the sale of such branches in 1994.

6. Correlative and Computational Adjustments. In addition to the adjustments set forth above, Home is entitled to all correlative and computational adjustments and consequential changes to any items (including, but not limited to, all types of credits (including but not limited to alternative minimum tax credits), net operating losses and charitable contributions, the carryback and carryover of the credits, losses, and deductions) required in the year in issue resulting from the adjustments in the year in issue.

7. Interest. Home requests a refund of assessed interest plus statutory interest as provided by law.

June 2006 Claim for Tax Year 1994

(by Savings of America)

Form **1120X** (Rev. December 2004) Department of the Treasury Internal Revenue Service

# Amended U.S. Corporation Income Tax Return

OMB No. 1545-0132

For tax year ending ▶ 12/1994 (Enter month and year.)

Please Type or Print

Name: H.F. Ahmanson & Co. & Cons. Subs., by Savings of America, Inc. as substitute agent*

Employer identification number: 95-0479700

Number, street, and room or suite no. (If a P.O. box, see instructions.): c/o Washington Mutual, Inc.; PO Box 834, FIS 1520

Telephone number (optional):

City or town, state, and ZIP code: Seattle, WA 98111

Enter name and address used on original return (If same as above, write "Same."): H.F. Ahmanson & Co. & Cons. Subs.; 4900 Rivergrade Road; Irwindale, CA 91706

Internal Revenue Service Center where original return was filed ▶ Ogden, UT

**Fill in applicable items and use Part II on the back to explain any changes**

| **Part I** Income and Deductions (see instructions) | | (a) As originally reported or as previously adjusted | (b) Net change—increase or (decrease)—explain in Part II | (c) Correct amount |
|---|---|---|---|---|
| 1 Total income (Form 1120 or 1120-A, line 11) | 1 | 3,510,549,140 | 0 | 3,510,549,140 |
| 2 Total deductions (total of lines 27 and 29c, Form 1120, or lines 23 and 25c, Form 1120-A) | 2 | 3,510,549,140 | 896,450,125 | 4,406,999,265 |
| 3 Taxable income. Subtract line 2 from line 1 | 3 | 0 | -896,450,125 | -896,450,125 |
| 4 Tax (Form 1120, line 31, or Form 1120-A, line 27) | 4 | 556,661 | -556,661 | 0 |
| **Payments and Credits** (see instructions) | | | | |
| 5a Overpayment in prior year allowed as a credit | 5a | 740,825 | 0 | 740,825 |
| b Estimated tax payments | 5b | 0 | 0 | 0 |
| c Refund applied for on Form 4466 | 5c | 0 | 0 | 740,825 |
| d Subtract line 5c from the sum of lines 5a and 5b | 5d | 740,825 | 0 | 0 |
| e Tax deposited with Form 7004 | 5e | 0 | 0 | 0 |
| f Credit from Form 2439 | 5f | 0 | 0 | 0 |
| g Credit for Federal tax on fuels | 5g | 0 | 0 | 0 |
| 6 Tax deposited or paid with (or after) the filing of the original return | 6 | | | 0 |
| 7 Add lines 5d through 6, column (c) | 7 | | | 740,825 |
| 8 Overpayment, if any, as shown on original return or as later adjusted | 8 | | | 289,883 |
| 9 Subtract line 8 from line 7 | 9 | | | 450,942 |
| **Tax Due or Overpayment** (see instructions) | | | | |
| 10 Tax due. Subtract line 9 from line 4, column (c). If paying by check, make it payable to the "United States Treasury" ▶ | 10 | | | 0 |
| 11 Overpayment. Subtract line 4, column (c), from line 9 ▶ | 11 | | | 450,942 |
| 12 Enter the amount of line 11 you want: Credited to 20__ estimated tax ▶ Refunded ▶ | 12 | | | 450,942 |

JUN 30 2006 SEATTLE

**Sign Here**

Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer | 6/30/06 Date | ▶ Sr. V.P. Title

**Paid Preparer's Use Only**

Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ▶ | EIN | Phone no.

For Privacy Act and Paperwork Reduction Act Notice, see page 4. (HTA)

Form **1120X** (Rev. 12-2004)

Form 1120X (Rev. 12-2004) H.F. Ahmanson & Co. & Cons. Subs., by Savings of Am 95-0479700 Page 2

**Part II** **Explanation of Changes to Items in Part I** (Enter the line number from page 1 for the items you are changing, and give the reason for each change. Show any computation in detail. Also, see **What To Attach** on page 3 of the instructions.)

If the change is due to a net operating loss carryback, a capital loss carryback, or a general business credit carryback, see **Carryback Claims** on page 3, and check here ▶ ☐

BRANCHING RIGHTS ABANDONMENT LOSS - STATEMENT 1

*Savings of America, Inc. was a member of the H.F. Ahmanson consolidated group in 1994.

Pursuant to section 8 of Rev. Proc. 2002-43 and Treas. Reg. 1.1502-77A, Savings of America, Inc.

has been designated the substitute agent for H.F. Ahmanson & Co. & Consolidated Subsidiaries.

Form **1120X** (Rev. 12-2004)